CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

2018 APR 12  AM 9: 00

DEPUTY CLERK

| | | |
|---|---|---|
| CCI VENTURES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 1:17-CV-0019-BL |
| | § | |
| BERKLEY NATIONAL INSURANCE | § | |
| COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Opposed Motion for Leave to Amend Petition to Add

Defendants and for Remand (doc. 16). The motion is fully briefed and ready for ruling. Because

this action has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and

the parties have not consented to have all further proceedings in this case conducted by a magistrate

judge, the undersigned issues this report and recommendation and directs that this case be reassigned

to Senior District Judge Sam R. Cummings. For the reasons that follow, it is recommended that the

District Court grant the motion, allow the proposed amendment, and remand this case to state court.

## I.    BACKGROUND

Plaintiff commenced this action against defendants Berkley National Insurance Company

("Berkley") and Engle Martin & Associates Inc. ("EMA") in state court on January 6, 2017, and,

with the consent of EMA, Berkley removed the action to federal court on February 9, 2017. *See*

Def.'s Notice of Removal (doc. 1). A month later, Plaintiff moved to stay the action pending com-

pletion of the appraisal process. *See* Pl.'s Mot. Stay Pending Appraisal (doc. 7). To allow the parties

to complete that process, the Court administratively closed this case on July 24, 2017, over object-

ions by Berkley. *See* Order (doc. 12).

On October 23, 2017, the Court granted an unopposed motion to reopen the case and re-referred the matter to the undersigned. The next day, the Court issued an Order Requiring Attorney Conference and Proposal for Contents of Scheduling and Discovery Order (doc. 15). About a week later, Plaintiff filed the instant motion seeking leave to file an amended complaint to update its allegations against Berkley and to add Brian Buck ("Buck") and Pearl Insurance Group, LLC, ("Pearl"), as defendants. Mot. at 3. Through the motion, Plaintiff also requests that the Court remand this action to state court under 28 U.S.C. § 1447(c). *Id.* at 6-7.

Plaintiff attaches a proposed amended complaint that appears to presume that the Court will remand this action to state court. *See* Pl.'s First Am. Compl. (attached to Mot.) ¶¶ 7-9 (addressing jurisdiction and venue under Texas law instead of federal law). The proposed amendment asserts eight[1] claims jointly against the two new defendants. *See id.* ¶¶ 131-70 (professional negligence, breach of contract, breach of fiduciary duty, breach of duty of good faith and fair dealing, violations of Deceptive Trade Practices Act ("DTPA"), violations of Texas Insurance Code, misrepresentation, and common law fraud by misrepresentation). Defendant Buck is a Texas resident with a last known address in Austin, Texas. *See id.* ¶ 6. According to Plaintiff's alleged facts:

> (1) In September 2013, Plaintiff purchased a commercial insurance policy from Berkley to cover its automobile dealership located at 4142 South Treadaway Boulevard.
>
> (2) In May 2014, Plaintiff expanded its dealership and requested that additional property be added to the insurance policy.
>
> (3) Defendant Buck agreed to add the property on or about May 12, 2014.

---

[1]The amended complaint contains two claims labeled as "Count IV." *See* Pl.'s First Am. Compl. ¶¶ 145-54.

(4) Plaintiff received a proof of insurance for its property on May 12, 2014, listing Berkley as the insurer, Pearl as the producer, and Buck as the contact person.

(5) On or about June 12, 2014, a severe wind and hailstorm damaged the property.

(6) Plaintiff submitted an insurance claim to Berkley who assigned EMA to adjust the claim.

(7) Berkley paid Plaintiff approximately $45,000 for the claim in November 2014 and May 2015.

(8) Plaintiff invoked the appraisal clause of the insurance policy on April 29, 2016, and sought court intervention to appoint an umpire in early November 2016.

(9) In November 2016 and May 2017, Berkley agreed to appraisal.

(10) On July 14, 2017, Berkley withdrew consent to appraisal and denied the claim as outside the policy period.

*See id.* ¶¶ 10-26.

Plaintiff provides the June 14, 2017 letter from Berkley which informed Plaintiff that Berkley "formally withdraws its consent to appraisal" and "denies coverage for this insurance claim" because "the date of loss for the subject claim occurred" before the property was added to the policy. *See* Doc. 17 at 1-2. Attached to this denial letter is an email chain showing that Buck directed that the property be added as of June 13, 2014, instead of backdating it to June 1 as he initially requested. *See id.* at 5-6.

Berkley has filed a timely response (doc. 18) to the motion to amend and remand, the parties have filed a joint proposal for scheduling and discovery (doc. 19), and Plaintiff has filed a reply brief (doc. 20). The motion is ready for ruling.

## II.    LEAVE TO AMEND

Parties may amend pleadings "once as a matter of course" before trial if they do so within

(A) twenty-one days of serving the pleading or (B) "if the pleading is one to which a responsive pleading is required," twenty-one days of service of a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Other amendments before trial are allowed "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." *Id.*; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). Whether to allow a proposed amendment, after the permissive period, addresses the sound discretion of the court. *See Foman*, 371 U.S. at 182; *EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 333 (5th Cir. 2012).

As the Supreme Court stated long ago, the courts should grant leave absent "any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182. "The liberal amendment rules of F.R.Civ.P. 15(a) do not require that courts indulge in futile gestures" and when a proposed amended complaint "would be subject to dismissal, leave to amend need not be granted." *DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968) (per curiam). "Although the district court should err on the side of allowing amendment, leave to amend should not be given automatically." *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982). Consistent with the purposes of Rule 15(a), courts "should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation." *Id.* Furthermore, when a proposed amendment would add a new defendant, joinder of that defendant must be proper under the Federal Rules of Civil Procedure. *See Holcomb v. Brience, Inc.*, No. 3:01-CV-1715-M, 2001 WL 1480756, at *2 (N.D. Tex. Nov. 20, 2001) (addressing joinder

4

under Fed. R. Civ. P. 19 and 20).

While the foregoing legal principles apply generally to requests to amend under Rule 15(a), courts must read those principles and Rule 15(a) in conjunction with 28 U.S.C. § 1447(e) when an amendment would destroy diversity jurisdiction by adding a non-diverse party to a case previously removed to federal court. That statute provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Even when plaintiffs may amend as a matter of course under Rule 15(a), they must seek leave of court before filing an amendment that would add a non-diverse party and thus divest the court of jurisdiction over a removed action. *Estate of Brandon Alex ex rel. Coker v. T-Mobile US, Inc.*, No. 3:17-CV-2622-M, 2018 WL 993784, at *2 (N.D. Tex. Feb. 21, 2018). Furthermore, § 1447(e) does not allow a court to "permit joinder of non-diverse defendants but then decline to remand." *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999). "Accordingly, a party's right to amend its pleadings is not freely available when the amended complaint would destroy diversity." *Ocotillo Real Estate Inv. I LLC v. Lexington Ins. Co.*, No. 3:14-CV-3259-N, 2015 WL 11120867, at *1 (N.D. Tex. May 13, 2015).

Both Plaintiff and Berkley agree that the addition of Buck to this lawsuit destroys diversity jurisdiction.[2] Thus, if the Court were to grant leave for Plaintiff to amend its complaint and add Buck as a defendant, diversity jurisdiction will be lost in this case. *See Borden v. Allstate Ins. Co.*,

---

[2]The Fifth Circuit has long recognized that diversity jurisdiction under 28 U.S.C. § 1332 "demands diverse citizenship, not diverse residency," and allegations that parties are "residents" of different states does not suffice. *Nadler v. American Motors Sales Corp.*, 764 F.2d 409, 413 (5th Cir. 1985). While the proposed amended complaint only lists the residency of Buck, rather than his citizenship as pertinent to the jurisdictional question, no one suggests that his state citizenship differs from his state of residency. Given the arguments of the parties, it appears that they agree that Buck is a Texas citizen whose presence in this action would defeat diversity jurisdiction. If a party desires to contest that conclusion, it may do so in objections to this recommendation.

589 F.3d 168, 171 (5th Cir. 2009). These circumstances require consideration of § 1447(e) and matters related to the joinder of the non-diverse defendant. Of course, Plaintiff's motion provides an opportunity for "a diverse defendant," such as Berkley, to "argue that a post-removal joinder is improper *before* the court grants the plaintiff leave to amend." *Id.*

When a proposed amended pleading names a new, non-diverse defendant in a case removed from state court, the district courts "should scrutinize that amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). This close scrutiny requires courts to exercise their discretion in deciding whether to permit a non-diverse party to be added. *Id.* As noted in *Hensgens*, courts in these circumstances

> are confronted with competing interests. On one hand, there is the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources. On the other side, the diverse defendant has an interest in retaining the federal forum. Indeed, the removal statutes are predicated on giving the diverse defendants a choice of a state or federal forum. We conclude that the balancing of these competing interests is not served by a rigid distinction of whether the proposed added party is an indispensable or permissive party. Instead, the district court, when confronted with an amendment to add a nondiverse nonindispensable party, should use its discretion in deciding whether to allow that party to be added.

*Id.* (footnote omitted). In view of these competing interests,

> justice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits. For example, the court should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted.

*Id.*; *accord Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005) (setting out same four factors). Although § 1447(e) provides no explicit "standards to aid the Court

in its joinder analysis," the *Hensgens* factors guide courts as they balance the equities of a given case. *Holcomb*, 2001 WL 1480756, at *2.

The instant motion raises the propriety of amendment under Rule 15(a) as well as joinder under the Federal Rules of Civil Procedure and § 1447(e). For the Court to grant Plaintiff leave to add a non-diverse defendant such as Buck, Plaintiff must show that (1) joinder of the non-diverse defendant is proper under Fed. R. Civ. P. 19 or 20 and (2) the *Hensgens* factors gleaned from § 1447(e) do not weigh against joinder. *McNeel v. Kemper Cas. Ins. Co.*, No. 3:04-CV-0734-G, 2004 WL 1635757, at *1 (N.D. Tex. July 21, 2004).

## A. Joinder Under Federal Rules

In this case, Plaintiff provides valid arguments for permitting joinder of both new defendants under Fed. R. Civ. P. 20(a)(2). *See* Mot. at 5-6. Under that rule, persons

may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law of law or fact common to all defendants will arise in the case.

Courts generally regard "all 'logically related' events entitling a person to institute a legal action against another . . . as comprising a transaction or occurrence." *Rice v. Pfizer, Inc.*, No. 3:06-CV-0757-M, 2006 WL 1932565, at *3 (N.D. Tex. July 7, 2006) (quoting *Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651-52 (S.D. Tex. 2005)). Furthermore, they "are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense

to the parties and to the court." *Id.* (same).

"In other words, a plaintiff must show that the actions of the defendants to be joined are related to the actions of the original defendants." *Paragon Office Servs., LLC v. Aetna Inc.*, No. 3:11-CV-1898-L, 2013 WL 1842273, at *2 (N.D. Tex. May 2, 2013). The Rule 20(a) requirements "are not rigid tests"; they are instead "flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." *Scruggs v. City of Bowie, Tex.*, No. 7:14-CV-0123-O, 2015 WL 13450691, at *2 (N.D. Tex. June 18, 2015) (citations omitted).

In this case, the events giving rise to the claims asserted against the various defendants are logically related and thus provide a legitimate basis to join the new defendants. Berkley does not dispute the propriety of joinder specifically, but does argue that the claims arise out of different facts. *See* Resp. at 6-7. That argument misses the mark and the Court should find that Plaintiff has satisfied the requirements of Rule 20(a)(2) for joining the two new defendants based on the cited case law.

## B. *Hensgens* Factors

After finding joinder proper under the Federal Rules of Civil Procedure, the Court must equitably weigh the *Hensgens* factors. Plaintiff contends that the factors weigh in its favor. Mot. at 7. It submits that it proposed the amendment to assert good faith claims against Buck based upon his conduct that came to light in June 2017 as specifically alleged in the amended complaint – not to defeat federal jurisdiction. *See id.* It further submits that it has not been dilatory in seeking the amendment because the case was closed until October 2017 and Berkley did not deny its insurance claim based on an alleged error made by Buck until June 2017. *See id.* In addition, it asserts that

8

it will be significantly injured if Buck is not joined as a defendant, because Berkley now relies on an alleged error of Buck to deny the insurance claim and, if Berkley's allegations are correct, Plaintiff must seek damages from Buck. *See id.* Lastly, it states that it knows of no other equitable reason to not remand this action to state court. *See id.*

Utilizing the opportunity noted in *Borden* for diverse defendants to argue against joinder before the Court grants Plaintiff leave to amend, Berkley argues that the equities do not favor joining Buck in this action. *See* Resp. at 3-7. With respect to the first factor, Berkley argues that, under Texas law, an insured is presumed to have read the policy of insurance and to know its contents. *Id.* at 4. Given that presumption, Berkley contends that Plaintiff is presumed to have knowledge of Buck's alleged actions and thus characterizes Plaintiff's alleged unawareness of those actions as "wholly without merit." *Id.* Berkley also contends that Plaintiff was dilatory in seeking leave "to amend over nine months after filing its state court petition and over eight months after removal." *Id.* at 5. Even accounting for the time this action was administratively closed (July 24, 2017, through October 23, 2017), Berkley argues that Plaintiff was dilatory in seeking leave to amend. *Id.* Berkley also argues that the third and fourth factors do not favor joinder because the claims against Buck arise out of different facts and it is entitled to defend this cases in federal court based upon diversity jurisdiction. *See id.* at 6-7.

### 1. Factor One – Purpose of Amendment

In evaluating the first factor, "courts consider the viability of the proposed claims alleged against the new defendant, the timing of the plaintiff's attempt to add the defendant, and whether the plaintiff knew or should have known the identity of the new defendant prior to removal." *Estate of Brandon Alex ex rel. Coker v. T-Mobile US, Inc.*, No. 3:17-CV-2622-M, 2018 WL 993784, at *2

(N.D. Tex. Feb. 21, 2018). In connection with the timing component, courts also consider any proffered reasons for the delayed pursuit of claims against the non-diverse defendant. *Patton v. Ortho Dev. Corp.*, No. 3:13-CV-0071, 2013 WL 2495653, at *2 (N.D. Tex. June 10, 2013); *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, No. 3:09-CV-1596-D, 2010 WL 1491422, at *5 (N.D. Tex. Apr. 13, 2010). In addition, the knowledge component not only requires that the plaintiff knew or should have known the identity of the non-diverse defendant, but also that the plaintiff knew or should have known of the activities of the non-diverse defendants. *Darr v. Amerisure Ins. Co.*, No. CV 16-232-JWD-EWD, 2016 WL 5110267, at *5 (M.D. La. Aug. 31, 2016) (recommendation of Mag. J.) *adopted by* 2016 WL 5110480 (M.D. La. Sept. 20, 2016).

These three indicators – viability, timing, and knowledge – provide a material basis to determine whether the primary purpose of a proposed amendment is to defeat federal jurisdiction. This factor "usually favors joinder" when proposed claims against the non-diverse defendant are viable. *Patton*, 2013 WL 2495653, at *2. In such circumstances, "it is unlikely that the primary purpose of the amendment is to destroy diversity jurisdiction." *McNeel v. Kemper Cas. Ins. Co.*, No. 3:04-CV-0734-G, 2004 WL 1635757, at *2 (N.D. Tex. July 21, 2004); *accord R L Eldridge Constr., Inc. v. Blake Offshore, LLC*, No. 1:08-CV-162-TH, 2008 WL 11348289, at *9 (E.D. Tex. June 6, 2008) (recognizing this as the "common view among courts in this circuit").

"On the other hand, if the claims alleged against the nondiverse defendant are not viable, this factor clearly weighs in favor of denying joinder." *Andrews Restoration, Inc. v. Nat'l Freight, Inc.*, No. 3:15-CV-1336-M, 2015 WL 4629681, at *2 (N.D. Tex. Aug. 4, 2015). In fact, the Fifth Circuit stated long ago that courts would not grant a "request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (*i.e.*, a request fraudulent-

ly to join a party)."[3] *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999). Based on that statement in *Cobb*, the lack of a viable claim tilts the balance entirely toward denying leave to amend regardless of the other factors. This makes perfect sense considering that futility of amendment is a legitimate basis to deny a proposed amendment even when § 1447(e) issues are not implicated.

Plaintiff states that it has a good faith basis for its claims against Buck. Mot. at 4, 7. "To the extent that viability of the claim is unclear, courts nevertheless analyze the claims in the light most favorable to the plaintiff." *Patton*, 2013 WL 2495653, at *2. At this stage of the litigation, the Court should "take the Plaintiff at [its] word" and "should not deny [it] the opportunity to bring all of [its] related claims in one suit" even if the Court may be "skeptical" that Plaintiff may succeed on the claims in state court. *See Holcomb v. Brience, Inc.*, No. 3:01-CV-1715-M, 2001 WL 1480756, at *3 (N.D. Tex. Nov. 20, 2001). Moreover, when faced with a motion seeking leave to amend to join a non-diverse defendant, current defendants have the opportunity "to prevent joinder by arguing that there is no colorable claim against the party the plaintiff is seeking to join." *Cobb*, 186 F.3d at 678. While "the fraudulent joinder doctrine" is not directly applicable to non-diverse defendants sought to be joined after removal, *see id.*, considering the viability of asserted claims essentially applies that doctrine to non-diverse, sought-to-be-joined defendants, *see R L Eldridge Constr., Inc.*, 2008 WL 11348289, at *9 & n.8.

To succeed on a claim of improper joinder, the defendant must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant," which means that the defendant must show that "there is no reasonable basis for the district court to predict that the plaintiff might

---

[3]The Fifth Circuit has subsequently "adopted the terminology 'improper joinder' instead of the terminology 'fraudulent joinder.'" *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 n.14 (5th Cir. 2013). The doctrine is the same regardless of the terminology used.

11

be able to recover against an in-state defendant." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (citations and emphasis omitted); *accord Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016) (using same phrasing but substituting "nondiverse" for "in-state"); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (adopting "this phrasing of the required proof and reject[ing] all others, whether the others appear to describe the same standard or not").

Berkley does not contest the validity of any claim sought to be asserted against Buck. *See* Resp. at 4-5. Accordingly, Berkley has failed to carry its "burden of proving that, on the face of the complaint, the Plaintiff[] could not possibly recover against [the non-diverse defendant]." *Wells v. Medtronic, Inc.*, 171 F. Supp. 3d 493, 510 (E.D. La. 2016). It is thus within the Court's discretion to conclude that "the first *Hensgens* factor—whether the purpose of amendment is to destroy diversity—weighs in favor of allowing amendment." *Id.*

"However, even when the plaintiff asserts viable claims, if 'the timing of the proposed amendment suggests [the plaintiff's] principal purpose is to destroy diversity,' the factor weighs against joinder." *Coker*, 2018 WL 993784, at *2. After Berkley removed the case to this court, Plaintiff moved for a stay so that the parties could complete the appraisal process. During that process, Berkley withdrew its consent to engage in the process, denied the insurance claim, and provided emails showing Buck's directions to add the property as of June 13, 2014. After additional efforts to complete the appraisal process, Plaintiff moved to reopen this case. A month later it moved for leave to amend so as to add the two new defendants. This time-line of events does not suggest that the amendment's purpose is to deprive this court of diversity jurisdiction. Plaintiff, furthermore, has proffered an adequate explanation for the timing of the proposed amendment.

Turning to the knowledge indicator for ascertaining the purpose of the proposed amendment, the Court considers Plaintiff's knowledge – at the time it filed the original complaint – about the factual basis for the newly asserted claims against the non-diverse defendant. Berkley relies on a state law presumption to argue that, at the time Plaintiff filed the original complaint, Plaintiff knew or should have known the contents of its insurance policy, and by extension, the alleged conduct of Buck that led Plaintiff to move to add him as a defendant. *See* Resp. at 4. Through the proposed amended complaint, Plaintiff asserts eight claims jointly against the two new defendants. There is no question that Plaintiff knew the identities of the two new defendants when it originally commenced this action in state court. Plaintiff contends, however, that it did not know about facts giving rise to those claims until it received the denial letter in June 2017.

The Court should not be swayed by the presumption relied upon by Berkley. In reply, Plaintiff points out that it was issued proof of insurance for its property in May 2014; states that Berkley's denial of the insurance claim in June 2017 first made it aware of the alleged failures of Buck; and asserts that claims of negligence, negligent misrepresentation, and violations of the DTPA and the Texas Insurance Code do not accrue against an insurance broker until the insurance company sends a letter denying the insurance claim, which did not occur until June 2017. Reply at 3. In addition, given the allegation that Berkley partially paid Plaintiff's claim before denying it as outside the policy period in June 2017, Berkley's own actions seem to have contributed to the initial failure to name Buck and Pearl as defendants. Even if the Court can rely on the presumption for determining whether Plaintiff should have known the factual basis for its claims against Buck, given the facts of this case, Plaintiff has provided a persuasive basis for finding that it had insufficient knowledge to bring suit against Buck in the original state action.

Considering the facts as a whole, the Court should find that defeating federal jurisdiction is not the primary purpose of the requested amendment. The timing of the amendment does not suggest that purpose. Nor does the knowledge indicator point toward finding that as the primary purpose. Moreover, viability of asserted claims makes it unlikely that that is the primary purpose. Under the facts of this case, the Court should not attribute a jurisdictional-defeating purpose to the proposed amendment. The first factor supports permitting the proposed amendment.

### 2. Factor Two – Diligence in Seeking Amendment

The second factor often takes two time periods into consideration: (1) the amount of time between the filing of the original complaint in state court and the proposed amendment and (2) the amount of time between the removal and the proposed amendment. *Ocotillo Real Estate Inv. I LLC v. Lexington Ins. Co.*, No. 3:14-CV-3259-N, 2015 WL 11120867, at *2 (N.D. Tex. May 13, 2015). In this case, Plaintiff moved for leave to amend about ten months after filing the action in state court and nine months after its removal to this Court. If those two time periods were the only periods material to the second factor, the Court might agree that Plaintiff was dilatory and find that factor two favors against amendment. But the Court should not find factor two to be limited only to considering those two time periods.

Whether the plaintiff has been dilatory in asking for an amendment depends on the circumstances as a whole. While some cases may warrant looking only to the two identified time periods, this is not such a case. First, Plaintiff contends that it did not become aware of facts to support a claim against Buck until June 2017. Knowledge of the factual basis for a claim undoubtedly factors into the reasonable diligence in asking for an amendment – just as it factors into ascertaining the primary purpose of the amendment.

14

But even disregarding when Plaintiff knew or should have known the factual basis for its claim against Buck, factor two favors allowing the amendment. Plaintiff moved for a stay of this action within a month of its removal. The Court ultimately concluded that administratively closing this case was preferable to staying it and thus denied the motion to stay. Nothing else of consequence happened in this federal action until Plaintiff sought to reopen this case on October 18, 2017. Plaintiff sought leave to amend one week after the Court reopened the case. Plaintiff moved for a stay expeditiously. While that motion remained pending, Plaintiff had no reason to amend the complaint. Plaintiff likewise had no reason to amend the complaint while the case was administratively closed so that the parties could complete the appraisal process. Plaintiff diligently sought leave to amend within two weeks of moving for the Court to reopen the case.

In addition, although the parties have submitted a proposal for a scheduling and discovery order at the Court's request, the Court has not yet issued a scheduling order for this case. "Courts often find that a plaintiff has not been dilatory when the plaintiff amends the complaint 'before any trial or pre-trial dates were scheduled and no significant activity beyond the pleading stage has occurred.'" *Estate of Brandon Alex ex rel. Coker v. T-Mobile US, Inc.*, No. 3:17-CV-2622-M, 2018 WL 993784, at *2 (N.D. Tex. Feb. 21, 2018) (quoting *Andrews Restoration, Inc. v. Nat'l Freight, Inc.*, No. 3:15-CV-1336-M, 2015 WL 4629681, at *6 (N.D. Tex. Aug. 4, 2015)).

For all of these reasons, the Court should find that the second factor favors allowing the proposed amended complaint.

### 3. Factor Three – Injury to Plaintiff

The third *Hensgens* factor concerns whether Plaintiff "would be significantly injured" if the Court does not permit it to amend its complaint to add the non-diverse defendant. *McNeel v. Kemper*

*Cas. Ins. Co.*, No. 3:04-CV-0734-G, 2004 WL 1635757, at *4 (N.D. Tex. July 21, 2004). Plaintiff contends that, if Berkley properly denied its insurance claim based on the alleged error of Buck, it cannot recover its damages that would have been due under the insurance policy without joining Buck. Mot. at 7. Berkley, however, argues that (1) the claims against it and Buck do not arise out of the same facts; (2) Plaintiff has made no showing that Berkley would be unable to satisfy a judgment against it; and (3) nothing precludes Plaintiff from suing Buck in state court. Resp. at 6-7. Defendant relies heavily on *Ocotillo Real Estate Investments I LLC v. Lexington Ins. Co.*, No. 3:14-CV-3259-N, 2015 WL 11120867 (N.D. Tex. May 13, 2015) as support for finding its first and second arguments sufficient to find no significant injury to Plaintiff. Resp. at 6-9. In reply, Plaintiff argues that the facts involved in the claims against the various defendants "are so intertwined" that parallel lawsuits would severely prejudice it. Reply at 6.

At the outset, the Court should note that *Ocotillo* is factually distinguishable from this case and does not control in any event because joinder under § 1447(e) and weighing the *Hensgens* factors are matters of discretion that depend on the facts presented by the particular case then before the court. The court in *Ocotillo* dealt with adding claims against insurance agent defendants after the court had already dismissed them from the case. *See* 2015 WL 11120867, at *1-2. While the court found that the claims against the agents and the other defendants did not arise out of the same facts and suggested that a plaintiff cannot suffer prejudice unless the two lawsuits arise out of the same facts, it did not find a lack of prejudice until it also noted that the plaintiff before it could be afforded complete relief without the requested amendment. *See id.* at *2.

Under the facts of this case, whether Berkley can satisfy a judgment against it ignores the possibility, which Plaintiff alleges, that Berkley is not liable due the allege conduct of Buck, but

Buck would be liable. Given the possibility of inconsistent outcomes in parallel state and federal proceedings, a matter not addressed in *Ocotillo*, Plaintiff here could be deprived of complete relief unless the Court permits the proposed amendment.

Furthermore, although *Ocotillo* spoke in terms of "the same facts" and found that misrepresentation claims against the agents differed from claims relating to hail damage asserted against the insurance carriers, it did not address the joinder requirements of Fed. R. Civ. P. 20(a)(2) that provide a broader basis for joinder. Berkley's first argument essentially addresses whether joinder is proper under the Federal Rules of Civil Procedure – an issue already addressed earlier in this recommendation. If the Court has found that joinder is proper under Fed. R. Civ. P. 20(a)(2), the factual differences underlying the claims against Buck and Berkley are insufficient to find that Plaintiff would not suffer significant injury should the Court not permit the proposed amendment. As argued by Plaintiff, the facts underlying the claims against the various defendants are intertwined and related. Despite some differences in those facts, Plaintiff has sufficiently shown that it would be significantly prejudiced if forced to litigate its claims in two forums with the inherent possibility of inconsistent outcomes and waste of scarce judicial resources.

Finally, that nothing stops Plaintiff from pursuing the claims against Buck in state court does not support finding that Plaintiff will not be significantly injured if forced to litigate the claims against Buck separately from the claims against the original defendants, Berkley and EMA. While the Court should be cognizant that Plaintiff's claims against Buck are also asserted jointly against Pearl, a fact that can impact whether the Plaintiff would suffer significant injury should the Court decline to permit Buck's joinder, *see Andrews Restoration, Inc. v. Nat'l Freight, Inc.*, No. 3:15-CV-1336-M, 2015 WL 4629681, at *6 (N.D. Tex. Aug. 4, 2015), the fact that Buck's employer may be

17

liable for his conduct does not preclude the Court from exercising its discretion to permit his joinder, *see McNeel*, 2004 WL 1635757, at *4. In this case, Berkley does not contest the viability of the claims to be asserted against Buck. Nor does it contend that the joint nature of the claims eliminate significant injury to Plaintiff. At this point, furthermore, the Court proceeds as though the viability of proposed claims against Buck favor joinder.

After considering judicial efficiency, additional costs to Plaintiff, and the possibility of inconsistent results between parallel state and federal actions arising out of the same series of transactions or occurrences, the Court should find these matters "militate in favor of not requiring" Plaintiff to pursue its separate claims in different forums and "that – on balance –[Plaintiff] will be prejudiced, and judicial economy disserved, by denial of the amendment." *Id.* The third factor favors amendment, the "merits of [these claims] are most properly determined by the state court, and this court should not deny [Plaintiff] the opportunity to bring all of [its] related claims in one suit." *Id.*

### 4. Factor Four – Other Matters Bearing on Equities

"The fourth *Hensgens* factor is to weigh any other equitable considerations that would affect the amendment." *Id.* In this respect, Berkley argues that it is entitled to defend this case in federal court under diversity jurisdiction because Plaintiff's factual basis against the original defendants differ from the basis for suing Buck and Pearl. Resp. at 7. It views the claims asserted against the original defendant as relating to hail damage, an alleged inadequate investigation by EMA, and its failure to fully pay the insurance claim based on that investigation. *Id.* It views the claims asserted against Buck and Pearl as related to their alleged failure to obtain insurance coverage for the property at issue. *Id.*

As already discussed, these factual distinctions do not make it improper to join the new

18

defendants under Fed. R. Civ. P. 20(a)(2). The factual differences were also considered when addressing whether Plaintiff would suffer significant damage by denying the proposed amendment. This factor is neutral when the Court has properly considered asserted other matters within the consideration of the other three factors. *See Wells v. Chesapeake Energy Corp.*, No. CA H-15-1856, 2016 WL 1182247, at *4 (S.D. Tex. Mar. 28, 2016).

While defending this case in federal court certainly bears on the equities, it is in actuality a competing interest that the courts balance for every original defendant. To consider it as a separate factor in and of itself appears unwarranted. The courts balance that interest against the Plaintiff's interest in avoiding two lawsuits in different courts. Other equitable factors tilt the scale toward allowing or denying the amendment. Without other equitable factors, the fourth factor neither weighs for nor against a proposed amendment.

### 5. Balancing the Competing Interests and the Equities of the Case

When faced with a proposed amendment that would divest the court of diversity jurisdiction by adding a non-diverse defendant to a case previously removed from state court, the courts are tasked with balancing the competing interests of the original defendants in remaining in the federal forum and of the plaintiff in avoiding parallel litigation in state and federal courts. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). This entails consideration of the above factors as the Court balances the equities of the case to decide whether it should permit the non-diverse defendant to be added. *Id.* The ultimate decision lies within the Court's sound discretion. *See id.*

As discussed in prior sections, the Court should find that factors 1, 2, and 3 favor allowing the proposed amendment. The fourth factor is neutral. On balance, the Court should find that the equities favor allowing the amendment. It should exercise its discretion to permit Plaintiff to file

its amendment and add Buck as a defendant.

## III.    REMAND

After Plaintiff obtains leave of court and files its amended complaint, diversity jurisdiction over this action will be lost. *See Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009). At that point, 28 U.S.C. § 1447(e) mandates that the Court remand the case to state court. The statute simply does not permit the Court to join a non-diverse defendant and retain the case. *See Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999). The Court's decision as to allowing the amendment to add Buck thus dictates whether it retains the case or remands it. Based upon the recommendation to allow the amendment, the Court should remand the case to state court.

## IV.    RECOMMENDATION

For the reasons stated, the Court should **GRANT** Plaintiff's Opposed Motion for Leave to Amend Petition to Add Defendants and for Remand (doc. 16), **DIRECT** the Clerk of Court to file the amended complaint that Plaintiff attaches to the motion, and **REMAND** this case to the 104th Judicial District Court of Taylor County, Texas. Because the parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to **REASSIGN** this case to Senior District Judge Sam R. Cummings.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An

objection that merely incorporates by reference or refers to the briefing before the magistrate judge

is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing

the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the

District Court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79

F.3d 1415, 1417 (5th Cir. 1996).

   **SO ORDERED this _12_ th day of April, 2018.**

                                        E. SCOTT FROST
                                        UNITED STATES MAGISTRATE JUDGE

21